Blatchford, C. J.
This suit is brought on re-issued letters patent No. 4,777, division A, granted March 5, 1872, to Edward T. Coveil, for an “improvement in machines for closing seams of metallic cans,” the original patent having been granted to said Coveil September 21,1869, for 17 years, from September 10, 1869, and re-issued in two divisions. The specification of the re-issue states that the invention is “an improvement in machinery for closing and clamping the end-joints of sheet metal cansthat the invention “relates to the construction of machinery for closing, clamping and pressing down the seams, forming projecting joints at the top and bottom of a sheet metal can or other vessel;” and that “it consists, third, in the use and arrangement of opposite clamping jaws or compressing plates, formed and shaped to fit upon and clamp between them the entire joint at either end of the can at one operation, in combination with a movable or stationary head plate or anvil, made to fit within, the projeo *360 tion formed by the joint to be closed; the object of this part of my invention being, in the case of angular cans, to perfect the corners or angles at the top or bottom of the can simultaneously with the closing and clamping of the entire seam at the top or bottom of the can, and to produce thereby a more perfect joint than can be obtained in machines in which the top and bottom seams are closed by clamping jaws which, bearing only against the sides of the head, do not embrace the corners or angles thereof.”
There are four claims in the re-issue, but claim 3 is the only one alleged to have been infringed in this case. It is in these words: “3. In combination with an intermediate fixed or movable supporting plate or anvil, angular clamping jaws, adapted to be moved against the angles or corners of the projecting end seams or joints of a rectangular sheet metal can placed thereon, and formed to embrace said corners, and to close and clamp between them the entire end seams or joints of the can, all substantially as herein set forth. ”
Figure 1 of the drawings annexed is stated to be a view in perspective of one form of machine embodying the invention, the clamping jaws of which have a vertical movement, the machine being adapted to close and clamp simultaneously the joints of both ends of the can. Figure 2 is stated to be “a view in perspective of a can, with its heads in ends placed loosely therein, ready to be closed and clamped.” Figure 4 shows the clamping jaws opened and figure 5 shows them closed upon the joint or seam of the can. The specification states, that the clamping jaws, of which there are two of each kind, are arranged to meet in pairs, one of each kind making a pair, the two lower ones in a vertical machine being alike, and the two upper ones in a vertical machine being alike; that each of the four is shaped or cut out to form a notch, a, “to embrace, and fit closely and accurately, upon a section or portion of the joint at the end of the can,” so that when the two in a pair are brought together they will include and cover the whole joint, and bear evenly upon every point thereof.
In the vertical machines shown in the drawings the lower *361 jaw in each pair is secured to a bed-plate, and the upper jaws work between guides and close down on the lower jaws. The specification states that the four jaws may be worked horizontally on a bed-plate, and that, in such case, both of the jaws in a pair may be arranged to slide and meet upon and close over the end joint of the can. It also says: “W (figure 2) represents a can to be operated upon; L L are head-plates or anvils, adapted to fit accurately against either head or end, C, of the can, W, within the flange formed by its projecting end joint or seam, c, so as to afford an inner support to said joint to resist an outward pressure thereon. * * * In operating this machine the movable jaws are lifted or opened, as illustrated in figure é, and the head-plate, L, withdrawn or retracted to permit the ready insertion of the can, W, against and upon the opposite head-plate. The unfinished can, having its heads or ends, G, placed loosely upon the body, with their projecting partially folded edges properly overlapped, as shown in figure 2, is then placed upon and against the head-plate, L, and the opposite head-plate, L, is suffered to close upon it, thus screwing it between said plates and affording an inner continuous solid support to the projecting joint at each end. The clamping jaws, D, are then closed by the power of the press. So soon as the jaws press upon the upper comers and edges of the can the head-plates yield until the lower corners and edges strike the lower jaws, B, when the resistance of said jaws and of the head-plates to the movement of the upper jaws will operate to clamp and tightly compress and close the seams of the joints. The corners embraced within the jaws are not only perfectly closed, but are very neatly finished. The other two corners are likewise closed and finished, but may be improved by turning the can and repeating the compressing movement. The head-plates, L L, and the jaws, B D, may all be so secured as to admit of being detached and replaced by other forms and sizes thereof, to hook upon various forms and sizes of cans.
“The drawing shows the notch, a, in each of the clamping jaws, B and D, to be a right angle, without any provision in the notch, by any enlargement or recess, to accommodate any *362 accumulation or thickness of metal at the corner of the can caused by the overlapping there of two or more thicknesses of tin upon each other. This notch, a, is the clamping angle of the jaw, and the drawing shows that its construction is such that it is intended, without any enlargement or recess in it, to fix tightly against the metal of the can which goes into the notch or angle, while the adjacent pieces of the jaw on each side fit closely against the two edges of the can. This can only he done so as to make a uniform pressure and bearing of the entire extent of the two faces and angle of the jaw, by getting rid of having any accumulation or thickness of metal at the corner of the can. Accordingly, the drawing of the can, (figure 2,) showing the can with its head or end placed loosely on it, ready to be clamped, shows the metal at the adjacent ends of two parts of the head to be cut away, so ■as thus to get rid of any overlapping at the corner of the metal of one part of the head over the metal of the adjacent part of the head, and to enable the angle of the clamping jaw to be strictly a right angle.”
This was the structure and arrangement as shown in the ■drawings of the original patent. The drawings of the reissue are the same. But in the specification of the re-issue these words, namely, “the object of this part of my invention being in the case of angular cans,, to perfect the corners or •angles at the top or bottom of the can simultaneously with the closing and clamping of the entire seam at the top or bottom of the can, and to produce thereby a more perfect .joint than can be obtained in machines in which the top and bottom seams are closed by clamping jaws, which, bearing ■only against the sides of the head, do not embrace the corners or angles thereof, ” are found, which are not contained in the specifications of the original patent. The defendants’ expert states that he does not find in the original patent any warrant for this language, because the head of the can shown in the drawing of the original patent “is a notched head, which has no corners to be perfected, and which, when used, would prevent pressure from being applied to the corner of ■•the body of the can.”
*363 This is undoubtedly a correct view. The specification of the re-issue is framed so as to cover the machines with recesses in the angles of the jaws to act on corners that are not notched, while the specification and drawings of the original patent show that the inventor did not contemplate angles with recesses, and intended to operate only in cans, the corners of which were notched. The answer alleges that the re-issue is not for the same invention described or shown in the original; that new matter has been introduced into the specification of the re-issue not contained in the original specification; and that, therefore, the re-issue is invalid. It denies infringement.
The defendants’ machine operates upon cans with solid corners, not notched, and although the jaws in their machine embrace the corners as well as the sides, and move to their work in a line diagonal to the square of the head, yet such jaws have recesses at the corners to accommodate the excess of metal there. In this respect the defendants’ jaws have a pressure which existed in the broad side squeezers which existed before the plaintiffs’ invention.
The plaintiff remedied existing difficulties in one way, and the defendant in another way, essentially different. The plaintiff discarded the recess at the corner, and notched the metal of the can. The defendants retained the recess, and did not notch the can, but made the jaws to embrace, at the same time, parts of two faces and a corner of the can.
The plaintiff set forth, in his original patent, no structure or invention which would warrant him in claiming the right to cover jaws moving diagonally to the square, and embracing parts of the two faces and a corner, if the angles of the jaws are recesses and the corner of the can. is not cut away or notched. In this view, if the third claim of the re-issue be construed to cover the defendants’ machine, it is invalid, as a claim not warranted by anything in the original; and, if such claim be limited to the plaintiff’s real invention, the defendants do not infringe.
It seems, from these views, that the bill must be dismissed, with costs.